# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

RANDY LEAVITT,               )
                                   )
            Plaintiff,          )
                                   )
       *vs.*                   )   **CAUSE NO.  1:12-cv-1427-DKL-JMS**
                                   )
**CAROLYN W. COLVIN, Commissioner**  )
**of Social Security,**          )
                                   )
           Defendant.     )

## ENTRY

Alleging that he became totally disabled in December 2006, plaintiff Randy Leavitt applied for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act.  The defendant Commissioner of Social Security denied his application and he now invokes judicial review of that decision.

## Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record and correct legal standards were applied.  42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v.*

*Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if her impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law

judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

Mr. Leavitt's application was denied on initial and reconsideration reviews. He requested and received a hearing before an ALJ in November 2010, during which he and a vocational expert testified. Mr. Leavitt was represented by counsel during the hearing. The ALJ issued her decision in April 2011.

At step one, the ALJ found that Mr. Leavitt has not engaged in substantial gainful activity since his alleged onset-of-disability date in December 2006. At step two, the ALJ found that Mr. Leavitt has the severe impairments of **(1)** back dysfunction, which has been assessed variously as lumbar strain with disc extrusion at L3-L4 and minimal annular bulging at L3-L4, with radiculopathy, degenerative disc disease, and herniated disc with no myelopathy; and **(2)** diabetes mellitus. Mr. Leavitt alleged a cognitive or mental

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

impairment but the ALJ found no medically determinable physical or mental impairment that could be reasonably expected to cause the alleged symptoms had been demonstrated by objective medical signs and laboratory findings, as required by law. She also found that, while Mr. Leavitt had been treated for sinusitis, bronchitis, a crush injury to his right forearm and wrist, and hypertension, those were non-severe impairments because the medical evidence showed that their effects were not sustained or significant and, therefore, did not cause more than minimal functional limitations. At step three, the ALJ found that Mr. Leavitt's impairments, severe and non-severe, singly and in combination, did not meet or medically equal any of the Listings of Impairments. She examined listings 1.04 (disorders of the spine) and 9.08 (diabetes mellitus).[2]

For the purposes of steps four and five, the ALJ determined Mr. Leavitt's RFC. She found that he had the capacity for "light" work with postural and mental limitations. Posturally, he is limited to occasionally kneeling and crawling. Mentally, the ALJ found that "[c]onsidering the claimant's subjective complaints of pain and loss of memory/concentration, mentally the claimant has the capacity to understand, remember, and carry out simple, routine tasks." (R. 21.) At step four, the ALJ found that this RFC prevented the performance of any of his past relevant work. At step five, based on the testimony of the vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that Mr. Leavitt can perform and, therefore, he is not disabled.

---

[2] The endocrine-disorders listings, including 9.08 for diabetes mellitus, were removed from the Listings of Impairments after the decision on Mr. Leavitt's application.

In August 2012, the Commissioner's Appeals Council denied Mr. Leavitt's request that it review the ALJ's decisions, thus rendering the ALJ's decision the final decision of the Commissioner on Mr. Leavitt's application for benefits and the one that the Court reviews.

## Discussion

Mr. Leavitt asserts three errors in the ALJ's decision.

**Need for a cane.**

Mr. Leavitt argues that the ALJ's decision is erroneous because his RFC finding fails to "acknowledge Mr. Leavitt's need of a cane." (*Plaintiff's Brief in Support of Complaint for Review* [doc. 19] ("*Plaintiff's Brief*") at 11.)  He points out that, during the hearing, the ALJ asked if the cane that he was using was prescribed by a doctor.  Mr. Leavitt responded that it was prescribed when he first injured his back.  Evidence of such a prescription could not be found in the record, as confirmed by Mr. Leavitt's counsel at the hearing.  (R. 56-57.)  The vocational expert testified that, if Mr. Leavitt used a cane, then the light-level jobs that he testified existed for him would be eliminated.  (R. 60.)  The ALJ did not include any restrictions involving use of a cane in his RFC and found that Mr. Leavitt could perform exertional and postural functions that are inconsistent with use of a cane.  Mr. Leavitt argues that the ALJ ignored his use of cane by improperly requiring a medical prescription before crediting his need for one.

The ALJ did not ignore Mr. Leavitt's use of cane, having mentioned it four times in her decision. She noted that he testified that he uses a cane, (R. 22), and she noted that the records of three medical examinations or evaluations noted that Mr. Leavitt was using a cane, (R. 24, 25). While it is true that the ALJ's decision does not mention her dialogue with Mr. Leavitt at the hearing about whether a doctor had prescribed his use of a cane, the absence of a prescription in the record, (R. 56-57), and the vocational expert's testimony that the jobs that he had identified would not exist for a person using a cane, (R. 60), Mr. Leavitt fails to point to any evidence, other than his allegations, that he requires the use of a cane to ambulate or that a doctor prescribed the current use of cane. After noting at the hearing the lack of any prescription or suggestion from a medical professional in the record supporting his use of a cane, there was plenty of time after the hearing to augment the record with such evidence.

Social Security Ruling 96-9p, a policy interpretation of the implications of a RFC for less than the full range of sedentary work, provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Mr. Leavitt points to no evidence of a medical need, a medical prescription, or even a suggestion from any medical professional for the use of a cane.[3] The only medical opinion in the record, that of the state-agency physicians, is that a cane is not medically necessary. (R. 508, 512.)[4] It was Mr. Leavitt's burden to present evidence of a medical need for the use of a cane, and he failed to do so. The ALJ evaluated the credibility of Mr. Leavitt's statements about the severity of his symptoms in light of all of the evidence in the record — which necessarily includes his assertions that he required the use of a cane, because no other evidence in the record, medical or non-medical, supports such a requirement — and found them not entirely credible.

By his RFC finding, the ALJ obviously rejected any medical or functional need for Mr. Leavitt to use a cane and found that his allegations to the contrary are not credible. The Court can trace the path of his reasoning and finds that it is supported by substantial evidence.

---

[3] Mr. Leavitt quoted this passage from *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010): "Absurdly, the administrative law judge thought is suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist." This declaration does not help Mr. Leavitt. The use of a hand-held assistive device must be shown to be medically necessary. S.S.R. 96-9p. Despite having plenty of time and opportunity to do so, Mr. Leavitt presented no evidence that his use of a cane is medically necessary or even suggested by any medical professional, including an occupational therapist. As noted, the only expert medical opinion in the record is that the cane was not medically required.

[4] "Clmt alleges cane Rx'ed by TP but there is no MER [medical examination report] to support cane in current use or medically necessary. * * * Careful consideration has been given to the claimant's statements regarding alleged symptoms and their effect on functioning. The overall MER does not support alleged severity of symptoms nor allegation for need for AD [assistive device (cane)] for ambulation/balance. Clmt is partially credible." *Physical Residual Functional Capacity Assessment* (R. 507, 508, 512) (completed by state-agency physician M. Ruiz, M.D., and affirmed by state-agency physician D. Neal, M.D. (R. 520).)

**Medical expert opinion on Listings satisfaction.**

Mr. Leavitt argues that the ALJ erred by not having expert medical opinion supporting her findings at step three that Mr. Leavitt's impairments did not meet or medically equal any of the listings. He argues that, without a medical expert's testimony at the hearing regarding satisfaction of the listings' criteria, the ALJ was "playing doctor," making medical judgments for which she was not qualified. It is well-established that the opinions of agency physicians on the issues of meeting and medically equaling the listings, recorded on Disability Determination and Transmittal and other forms, satisfies the requirement for expert medical opinion on listings satisfaction. See S.S.R. 96-6p; *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). State-agency physicians M. Ruiz, M.D., and D. Neal, M.D., reviewed the evidence and recorded their opinions on whether Mr. Leavitt's impairments met or medically equaled the listings criteria. (R. 63-74, 80-93.) Mr. Leavitt has not shown that the ALJ committed error by not soliciting additional medical opinion on the issue of listings satisfaction.

**Articulation of credibility finding.**

Mr. Leavitt argues that the ALJ failed to adequately articulate her evaluation of the credibility of his descriptions of the severity of his symptoms and their resulting functional limitations, as required by 20 C.F.R. § 404.1529 and S.S.R. 96-7p.

Because of the inherent difficulty of evaluating a claimant's disability that is attributable in part to subjective experiences such as pain and mental impairments, the

Social Security Administration has established a specific protocol for the evaluation of symptoms. A basic principle underlying this protocol is that "symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques . . . ." Social Security Ruling ("S.S.R.") 96–7p (Policy Interpretation — Medical Evidence). 20 CFR § 404.1529(c)(3). Because there are no objective medical tests for the existence or severity of subjective symptoms, objective medical evidence can, at best, provide indirect evidence of symptoms by detecting and measuring physical or functional effects of the symptoms. 20 CFR § 404.1529(c)(2); S.S.R. 96-7p. Another fundamental principle underlying symptom evaluation in the regulations is the idiosyncratic nature of the perception and effects of subjective symptoms. Individuals can not only feel significantly-different intensities of a symptom resulting from the same impairment, but their functional limitations resulting from the same level of a symptom can differ significantly as well. S.S.R. 96–7p.[5]

By regulation and internal rulings, the SSA has incorporated these principles into a protocol for the evaluation of subjective symptoms:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory

---

[5] "[A]djudicators must recognize that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments and the same medical signs and laboratory findings." S.S.R. 96–7p (Policy Interpretation).

findings), would lead to a conclusion that you are disabled.

20 CFR § 404.1529(a).  This two-step protocol thus prescribes an initial objective inquiry to ensure the existence of the required causal impairment.  Then guidelines and factors are provided to direct adjudicators' second-step evaluations of the credibility of claimants' allegations of the degree of symptoms and limitations experienced.  The second step of the protocol requires that all available evidence be considered in determining credibility; objective medical evidence is not accorded determinative weight.

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements from you, your treating or examining physician or psychologist, or other persons about how your symptoms affect you.

20 CFR § 404.1529(c)(1).  While the Social Security Administration will always seek and consider objective medical evidence — defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption" — it "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. § 404.1529(c)(2).  Claims reviewers must consider all other relevant evidence, including evidence on the following factors:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.);

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

After examining all the evidence, the adjudicator makes a credibility determination:

We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . . Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).  S.S.R. 96–7p provides guidance on adjudicators' evaluation of credibility based on internal and external consistency, medical evidence, medical treatment history, observations of the claimant, and other sources.

An ALJ's credibility determination will not be overturned unless it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006), or "clearly incorrect," *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). If the ALJ's decision is supported by substantial and convincing evidence, it is entitled to deference. *Arnold*, 473 F.3d at 823. Although the determination of credibility must contain specific reasons for the credibility finding, *id.*, 473 F.3d at 822, a court does not review an ALJ's credibility finding for perfection or for a comprehensive, exhaustive articulation, and the Court will not undertake its own search of the record for evidence relevant to credibility:

> When assessing an ALJ's credibility determination, we do not, as [Plaintiff] suggests, undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, we merely examine whether the ALJ's determination was reasoned and supported. *See Jens*, 347 F.3d at 213–14; *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir.2000). It is only when the ALJ's determination lacks any explanation or support that we will declare it to be "'patently wrong,'" *Jens*, 347 F.3d at 213 (quoting *Powers*, 207 F.3d at 435), and deserving of reversal.

*Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

While an ALJ has the duty to articulate her evaluation of the evidence and explain the reasons for her decision, reflecting a logical bridge from the evidence to her conclusions, *Moore v. Colvin*, ___ F.3d ___, 2014 WL 763223, *1(7th Cir. 2014), a perfectly-articulated opinion is not required. Rather, a decision must be "sufficiently detailed that we are able to trace its path of reasoning." *Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005). "Where the Commissioner's decision lacks evidentiary support or is so poorly

articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Harmless errors do not warrant reversal and remand: "So the administrative law judge's opinion is vulnerable. But that is nothing new. No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Mr. Leavitt contends that the ALJ "never actually explained how the standard was applied to the facts and circumstances of this case," and "failed to conduct the proper analysis and failed to make proper findings." (*Plaintiff's Brief* at 14.) He identifies several specific errors committed by the ALJ.[6]

**Activities of daily living.** Mr. Leavitt argues that, by merely mentioning that Mr. Leavitt helps with household chores, including folding laundry, cooking, and mowing his yard with a riding mower, the ALJ did not make even a half-hearted attempt to apply and articulate the credibility standard. He also argues that the ALJ mistakenly stated that he mows the lawn with a riding mower when, in fact, he denied at the hearing that he mows the lawn.

---

[6] Because the Court may not undertake its own credibility analysis, Mr. Leavitt's assertion of a general failure by the ALJ to adequately articulate his findings or to address the seven factors does not state an argument that the Court may entertain. The Court confines itself to the specific errors identified and developed by Mr. Leavitt.

Regarding Mr. Leavitt's daily activities, the ALJ wrote:

> The claimant testified that he is currently working on his GED and attends classes twice a week. He also stated that he helps with household chores including folding laundry and cooking. I find the evidence contained in the record does not support the claimant's allegations of symptoms so severe as to preclude performance of any work since his alleged onset date. The record shows that the claimant is able to perform exertional activities that are consistent with the residual functional capacity, such as standing for extended periods in an effort to gain entrance to a game show. In addition, the claimant mows his lawn with a riding mower.

(R. 26.) The ALJ clearly made mistakes in his description of Mr. Leavitt's activities. First, when the ALJ asked him to describe what he had done the previous day, Mr. Leavitt testified that his wife asked him to fold some towels just out of the dryer, but he did not get it done, (R. 54), and, second, he testified that, while he loves to cook, he can't stand at the stove like he used to and it had been "quite a few months" since he cooked a meal, (*id.*). These are the only mentions of folding laundry and cooking in the transcript. While this testimony might indicate that folding laundry and cooking are activities that Mr. Leavitt had done in the past or occasionally does currently, the testimony is that he does not do these activities currently because of his symptoms. His testimony certainly is not inconsistent with his symptom descriptions or indicate that he has the capacity for sustained work. The ALJ mischaracterized Mr. Leavitt's testimony.

Similarly, when asked by the ALJ about "outside chores," Mr. Leavitt testified that he tried mowing the lawn with a riding mower but he cannot do it because of "the bumps and everything." (R. 43-44). The ALJ's citation to contrary evidence showing that he mows

his lawn with a riding mower does not contain any mention of lawn mowing. The Commissioner attempts to correct the ALJ's decision by citing a physical-therapy note recording that Mr. Leavitt reported that his "low back hurts more than last week. He reports he mowed his lawn over the weekend with a riding mower, so bounce a lot." (*Defendant's Memorandum in Support of Commissioner's Decision* [doc. 24] ("*Defendant's Brief*") at 12; R. 441.) The Commissioner characterized this evidence as contradicting Mr. Leavitt's hearing testimony: "while at the November 2010 hearing Plaintiff testified that he no longer used a rising lawnmower to mow his lawn, the medical records showed that during the relevant time he was using a riding lawnmower to mow his lawn." (*Id.*) The hearing was in November 2010, but the physical therapy note was from May 21, 2007, over three years earlier, so there was no inherent inconsistency between Mr. Leavitt's report to the physical therapist and his hearing testimony. Also, there is no indication in the physical therapy note of how long Mr. Leavitt had been using the riding mower. In addition, the therapy note describes the same "bouncing" issue with the riding mower exacerbating Mr. Leavitt's pain, which tends to confirm the reason that he gave at the hearing for giving up the riding mower, which might have been at the same time as the physical-therapy note. The physical-therapy note does not reasonably support an inference that Mr. Leavitt was continually and regularly using a riding mower after, or even for a substantial period after, his alleged onset date.

In addition, the ALJ cited the fact that Mr. Leavitt had been attending GED classes twice a week but did not explain how this activity was inconsistent with the alleged severity of his symptoms or how it indicates an ability to sustain full-time work. Perhaps attending the classes *is* inconsistent with Mr. Leavitt's alleged degree of symptoms, but without exploration of the nature of the activities involved in attending class and Mr. Leavitt's experiences of pain during his attendance — which the ALJ did not undertake — the connection is not made and it is not evident to the Court.

The ALJ noted Mr. Leavitt's statement to Scott Taylor, M.D., during a physical examination in May 2007, that, while waiting in a line in an asphalt parking lot for a game-show try-out during an afternoon, overnight, and most of the next day, he stood most of the time and slept on the asphalt. The ALJ found that this was inconsistent with Mr. Leavitt's assertions of disabling symptoms, as Dr. Taylor himself thought and recorded in his report. (R. 24, 26, 465.) The Court finds that this negative credibility inference is reasonable.[7] However, the ALJ did not explore the incident during the hearing and, in the context of the ALJ's errors in evaluating and drawing inferences from Mr. Leavitt's other activities, and her failure to address other testimony of Mr. Leavitt's limited activities that

---

[7] The Court notes, however, that the game-show incident occurred sometime between Mr. Leavitt's alleged onset date (December 18, 2006) and the date of Dr. Taylor's examination (May 2, 2007), a period of less than five months, but the ALJ relied on this inconsistency — as she did the report of Mr. Leavitt's use of a riding mower (also occurring in May 2007) — as reason to discredit Mr. Leavitt's testimony during the hearing in November 2010, 3 years and 6 months later, and to find him not disabled in April 2011, almost 4 years later. The ALJ apparently did not undertake any inquiry or analysis into an onset date other than Mr. Leavitt's asserted December 18, 2006.

are contrary to her credibility determination,[8] it does not supply enough substantial evidence by itself to support the ALJ's overall credibility determination.

**Frequency, intensity, and duration of severe pain.** Mr. Leavitt argues that the ALJ's decision "fails to lay out its conclusion or the evidentiary support for its conclusion on how frequent, intense, or long Mr. Leavitt's bouts with severe pain are." (*Plaintiff's Brief* at 16.) However, the ALJ described the location, duration, frequency, and intensity of Mr. Leavitt's pain and other symptoms at the beginning of his RFC discussion, (R. 22), and she described Mr. Leavitt's reports of his symptoms that were contained in medical reports and other evidence, (R. 22-25).

**Medications.** Mr. Leavitt argues that the ALJ made no mention that he is on the medications Tramadol, Ibuprofen, and Vicodin, and she did not discuss what side effects "these powerful pain medications" may have on his ability to work. (*Plaintiff's Brief* at 16.) However, Mr. Leavitt, who was represented by counsel at the hearing, did not assert, or cite evidence of, any side effects that any of his medications had on his ability to work. He mentioned that he forgot to bring his current medications list to the hearing and remembered that he took insulin and Metformin, both for diabetes, and that he was given a pill for back pain, the name of which he could not remember. (R. 46-47.) He listed

---

[8] For example, the ALJ did not mention Mr. Leavitt's testimony that he cannot "very successfully" load the dishwasher because of pain on bending over, (R. 43); he cannot do the shopping alone, although he accompanies his wife, (*id.*); he gave up his hobby of working on cars because of pain on bending and lifting, (R. 44, 55); four or five times a month, he has a bad day where the pain is so bad he can do nothing and sometimes stays in bed, (R. 46); and he cannot watch much television because of his back pain, (R. 55-56).

Tramadol in the medications lists he included the *Disability Report* he completed in February 2009, (R. 242), and he listed Tramadol, Ibuprofen, and Vicodin in his August 2009 *Disability Report*, (R. 262). It was Mr. Leavitt's burden to show any relevant side effects of his medications and an ALJ is entitled to assume that a claimant represented by counsel, as he was, is presenting his best case for benefits. *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987). Therefore, the ALJ did not err in failing to specifically address Mr. Leavitt's medications or in failing to explore any relevant side effects.

**Combined effect of impairments.** Mr. Leavitt cites authorities declaring that an ALJ must consider the combined effect of all of a claimant's impairments, instead of considering them in isolation, (*Plaintiff's Brief* at 16-17), but he never asserts that the ALJ failed to so consider his impairments and he does not develop a supporting argument to that effect. Therefore, any argument that Mr. Leavitt intended to make on this point has been forfeited.

**Inconsistencies or ambiguities.** Citing S.S.R. 96-8p's requirement that ALJs must explain how any material consistencies or ambiguities in the record were considered and resolved, Mr. Leavitt states that the ALJ's "failure to discuss inconsistencies may be used in concert with other commandments in the Rulings to support a remand for rehearing." (*Plaintiff's Brief* at 17-18.) Because he does not identify any such inconsistencies or show their materiality, this argument is also forfeited.

**Summation.**  It is a close question whether the ALJ's mistakes in characterizing and evaluating Mr. Leavitt's activities of daily living render his overall credibility determination unsupported by substantial evidence and, further, whether a faulty credibility determination calls for a remand in light of the ALJ's other reasons for denying his claim.  After providing a bare recitation of record evidence, (R. 21-26), the ALJ provided little qualitative evaluation of the evidence compared to Mr. Leavitt's statements of symptoms and she summed up her RFC evaluation mostly with merely conclusory statements such as "[i]n sum, the above residual functional capacity assessment is supported by the evidence of record, medical findings, the opinions of the examining physicians, the claimant's level of activity, and the claimant's testimony at the hearing," (R. 26); "I find the evidence contained in the record does not support the claimant's allegations of symptoms so severe as to preclude performance of any work since his alleged onset date," (*id.*); "I find that claimant's subjective complaints and alleged limitations are not persuasive," (*id.*); and "[t]his [RFC] is consistent with and supported by the observations of treating sources in the medical records, the findings of consultants, and the claimant's own statements about his activities and abilities," (*id.*) — all appearing in the ALJ's one summation paragraph.

The ALJ better articulated her evaluations of the medical-opinion evidence.  She gave "significant weight" to the opinions of the two state-agency physicians, M. Ruiz, M.D., and D. Neal, M.D., that Mr. Leavitt is not disabled and is able to perform "light"

work, although she expressly noted that their opinions were "supported by the record *at the time offered* and consistent with evidence *subsequently received.*" (R. 26 (emphases added).) These two physicians did not review either Mr. Leavitt's hearing testimony, which is critical for a credibility determination, or the unidentified subsequently received evidence. She specifically noted the opinions of four other medical professionals finding that Mr. Leavitt was not disabled and/or could perform "medium" level work, but she gave all of them only "limited weight" for various reasons — *e.g.*, not from an acceptable medical source, lack of identification of specific functions, lack of consideration of subjective symptoms, and based on a different legal standard.

The Court of Appeals for the Seventh Circuit has criticized the practice of according undue weight to claimants' activities of daily living as indicators of the claimants' capacities for sustaining full-time work. *See Moore v. Colvin*, ___ F.3d ___, 2014 WL 763223, *7 (7th Cir. 2014). *Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013). *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)[9]. In this light and based on the ALJ's thin articulation of her evaluations of the evidence, the Court cannot conclude that the her mistakes in evaluating Mr. Leavitt's activities of daily living were harmless in their effects on her credibility determination or her overall disability conclusion. The Court cannot conclude in these

---

[9] "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, Bjornson's husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."

circumstances that a remand for a proper re-evaluation and articulation of the credibility of Mr. Leavitt's statements about the severity and limitations of his symptoms, and a consequent re-evaluation of his disability, might not lead to a different result.

Therefore, the Commissioner's decision denying Mr. Leavitt's application for benefits will be reversed and his claim remanded for re-evaluation and re-articulation consistent with the findings herein. The Commissioner is instructed on remand to re-evaluate the credibility of Mr. Leavitt's statements regarding the severity and limiting effects of his symptoms, particularly correcting the mistakes noted herein, and, if the new credibility determination warrants it, to re-evaluate whether Mr. Leavitt is disabled. In addition, the Commissioner is encouraged to consider whether, in light of the progressive nature of Mr. Leavitt's degenerative disc disease and other conditions, his impairments became disabling at some point after his alleged onset date, particularly in or after May 2007, when he reported standing in the game-show try-out line and using his riding lawn mower. The Court specifically notes that the Commissioner's consideration of the onset date is at her discretion because Mr. Leavitt did not assert, and therefore forfeited, such an argument and the Court has not found such error.

## Conclusion

The decision of the defendant Commissioner denying Plaintiff's claim for disability benefits will be **REVERSED** and Plaintiff's claim **REMANDED** to the Commissioner for reconsideration as explained herein.

**DONE this date:**  03/04/2014

_Denise K. LaRue_
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record _via_ ECF-generated e-mail.